First is number 181142, Integrated Claims Systems versus Travelers Indemnity Company, Mr. Ward. Good morning, Your Honor. The first thing I'd like to do is to inform the court that two months ago on November 6, 2018, the Patent Office issued United States Patent Number 10-121201 to Dr. DiRienzo. It's based on the same specification that we have before us in the two patents at issue here. The same art that was relied on by the board was brought to the attention of the examiner. What's the significance of that? The significance, Your Honor, is that there's a conflict at the Patent Office between whether the inventions disclosed in Dr. DiRienzo's specification are patentable or unpatentable. And we believe that the reason there's such a conflict is because the board erred in its interpretation of the term field. What difference would that make if your interpretation were adopted? If, if our interpretation was adopted, Your Honor, then it's clear that the art that the board relied on is not relevant. Why is that? Because it has absolutely nothing to do with the problem identified by Dr. DiRienzo and the problem that was solved by his inventions. Take a step back, Your Honor. Dr. DiRienzo took his mother to see the dentist. She needed... That's not going to help us. Well, but she needed oral surgery and couldn't get it right away. No, no, no. I asked you to address the prior art. What is it about the prior art that's missing under your interpretation? Dr. DiRienzo's invention bridges the gap between personal computers and mainframes. Let me try. What does Boghazi lack under your conception of the term field? Let's just assume for the second, I think Boghazi discloses your conception of the term field. So why would that be wrong? Boghazi, Your Honor, just does not mention mainframes anywhere in the spec. It has nothing to do with the problem of mainframes being able to identify and access images. I need help on your understanding of the word field, because I don't see anywhere in your proposed construction of field talking about mainframes. So now you talking about mainframes confuses me. Well, I think everything has to be in context when you read the specification. It's clear that the goal of Dr. DiRienzo's invention was to bridge this gap because mainframes had a hole in what they were able to interpret and store. And that had to do with images. But the fact of the matter is, Your Honor, that insurance companies had already spent millions and millions of dollars on their mainframe computers and on the software to run them. Each insurance company had its own hardware and software. And the goal of Dr. DiRienzo was to make those systems compatible so that one form, his AIC form, could be used with every insurance carrier. Are there any other litigations pending with respect to any other patents your client may have that are based on this specification? The same patents are at issue against the same petitioner in Connecticut. And there is another patent that has been adjudicated previously by this court in a case in Texas that's still pending the resolution of this matter. So, if we were to affirm here, would all pending litigations cease with respect to this family of patents? Well, there's one additional patent in one of the cases in Texas, I believe, that hasn't been attacked. But with respect to the other pending litigations, yes. And whether that would lead Dr. DiRienzo to determine that it made more sense just to end his litigations, I couldn't answer. With respect to that one lingering additional patent that would still be enforceable if even if we were to affirm here, would the construction of the term field matter with respect to that one additional lingering patent? I have to admit, Your Honor, that off the top of my head, I'm not sure. And to follow up on that question, the new patent that was just issued, obviously, we don't know what the claims were, but does the validity of that patent, do you think, depend on the same issues that are presented to us here? Certainly, in part, Your Honor, that the validity of the patent was found after Dr. DiRienzo obviously went out of his way to raise the issues that have been presented to the PTAB before the examiner. Okay. And was, I assume, Borghese and Biser were before the examiner in that case and the claims didn't apply in mainframes? Yes, and didn't apply for other reasons, no doubt, but certainly for that reason. Okay. I think that the specification and the claims do support our interpretation of fields, and so I would initially like to direct your attention to Claim 1 of the 129 patent at Appendix 224. And I don't want to belabor the point, but you'll see that the first portion of the claim deals with identifiable fields. The second portion of the claim deals with GUI fields, and I think any fair reading of that claim would indicate, doing a skill in the art, that the identifiable fields and the GUI fields are not one and the same, and in fact it's clear that some of the information from the identifiable fields that I mentioned up front is transferred into the GUI fields. And this is discussed in somewhat more detail in Column 32, and that's at Appendix 218. And if you look at Lines 23, it reads, it will be appreciated that the PAC form, when displayed on the computer's screen, 212, contains boxes. Those boxes are the GUI fields, and one of skill in the art would appreciate that that's exactly what a GUI field is, it's just a box in which information is entered. I'm sorry, what line are you on? I'm on Line 23, Column 32. Yes, okay. Next sentence goes on, it then goes on to describe precisely what the identifiable fields are, and you'll note that here the term field is actually in quotes, and it's a clear case of the patentee attempting to be his own lexicographer, and he identifies that these field identifiable fields are alphanumeric characters, and more specifically, a delimited alphanumeric character string. So a fair reading of what Dr. DiRienzo has disclosed in his specification clearly distinguishes between different fields. It's not fair to limit him to one when that allows an art that really is not pertinent. But I don't understand how it excludes Borghese, your interpretation. It excludes Borghese, again, Your Honor, because when you read in context, the only way to is that it has to do with a mainframe setting, and that's not Borghese. What's that have to do with your construction, the mainframe setting? How is that relevant to your construction? How is that encompassed within your construction? The purpose, these identifiable fields, the GUI fields have been around, obviously. The identifiable fields disclosed here were something that was different, and they were for use in interpreting data between PCs in the specification. The whole background of the invention describes exactly the context for the invention and why it is specifically directed to the problems encountered in mainframe computing and the lack of translation between mainframes and personal computers. And so your contention is that Borghese is not a mainframe context? Correct. And the same with Beezer. In fact, I direct your attention to the Appendix 204. So, but if that's the case, what is it in the claim language that says it has to be a mainframe context? Well, that's our position, Your Honor, is that's the only proper interpretation of the description that I previously provided at 218 is specifically directed to a mainframe environment. Why should that cause us to limit it to that? Because that was the inventor's intent, and that was clearly the problem that he identified and the problem that he attempted to solve. So if you're going to take out the terms from their context, then almost everything's can be broad enough to support unlimited prior art. Now, if there was prior art that put this in a mainframe context, that would be a completely different story. But Dr. DiRienzo appreciated that that wasn't the case. And if you look at... And your argument then is that the term identifiable fields as used in this patent is specifically designated for mainframes and only for mainframes. That's your argument? I believe that's accurate, Your Honor. Well, but that is your contention as to the term identifiable fields is limited to... Is what puts it into the proper context. Is designated for and limited to mainframes. Yes, Your Honor. And just to point out that to show that this was the intent, as I said, at 204, column three, starting at line 34, it reads, scanners are now available that can digitize a dental x-ray, i.e. convert it to a computer file that can be viewed on a monitor. But transforming the medical evidence into digital form is not enough to facilitate electronic processing of claims with attachments. One must also take into consideration the existing claims processing infrastructure, i.e. the legacy mainframe. That paragraph describes exactly what Beezer discloses, which is an insurance form dump where in the mailroom, they have set up multiple scanners and they create files on the spot. Durienzo was saying that's not me. We're into your rebuttal. Do you want to save the rest of it? I'll save the rest of my time. Thank you, Your Honor. Mr. Goldberg? Good morning, Your Honor. May it please the court. This is the third time ICS has come to this court about the term field. The first time ICS argued it meant computer software field, and ICS's counsel admitted that they didn't invent fields. That was in the context of patents in the same family as those here, the 093 and the 129 patents. And in response, the court affirmed the board's unpatentability findings. The second time, ICS changed tactics, arguing that fields means data comprised of label data and content data, the same construction that it's arguing for here. Can you just talk about claim one of the 129 patent, which is what your opposing counsel raised about there's two different usages of the word fields? And so how are we supposed to think about those two different usages? Does it suggest, does it require us to think of those two usages as being something different from each other? No, Your Honor. And why is that? Why would it use it in two different ways? And yet we should think about it as the exact same field. So although the term field comes up twice in the context of the identifiable field and in the context of the fields of the graphical user interface, in both situations, the way that the art applies to the claim to the term field is exactly the same. For example, for the identifiable fields, and I'll point your honors to Appendix Pages 52 through 59, which is where the board addressed these issues. The board specifically pointed to the parts of Borghese, this is for the identifiable field and specifically Borghese's disclosure. And I want to quote here, a number of text fields 110 for entering or viewing name, address, and telephone information. That's consistent with the board's construction of fields as entries created for at least alphanumeric data or image data. So that there, the identifiable fields, the fields where information is entered, these are fields in Borghese for entering data. So it's covered right there. And then for the fields of a GUI, again, the board pointed to areas of Borghese that disclose this, pointing to the figure six of Borghese, where it actually shows the... Where are you now? Are you on 52 or 59? So this will be for the graphical user interface portion, starting at 55 and up through 56. You'll see that the board first agrees with Travelers and points to its petition and also the underlying sites to Borghese, including figure six of Borghese and figure six of Borghese. And if your honors would like to look at that, at appendix page... Figure six is 409. Yeah. We can see here that we have the last name and we have Jones. So again, here we have the field and here it's in a GUI. So in both, under both ways of looking at field, whether it's the identifiable field or whether it's a field of a GUI, Borghese discloses both. So the distinction that... Are you pointing to the exact same thing in Borghese to teach both of those limitations? Well, the Borghese discussion about figure six, which appears on appendix page 437, actually explains that figure six is the graphical user interface. And the user interface is what provides the user with access to the assigned or pertinent claim work file. So although it's the same general discussion, figure six is illustrating the GUI portion, but it's also illustrating the work file behind the GUI portion, which is where the field in the identifiable field sense would be. ICS's counsel several times indicated that the aspect of the mainframe is what was key. That's not anywhere in the claims of the 129 patent. I do want to mention, though, that both of the references, Borghese and BISER, do actually disclose mainframe computers. In Borghese, we can see this at appendix page 443, starting at line 34. From the foregoing, a comprehensive system and method for managing insurance claim processing has been described. The system includes at least one remote computer, a mainframe computer or server, and a network connecting the computers. And then for BISER, we have appendix page 455 at column 8, line 10, and making a claim determination, an operator at workstation 35 may need to have access to a set of rules which are contained within the mainframe 70. And it goes on and refers to the mainframe 70 throughout the discussion there. I'd like to also address a few of the issues that ICS raised in its gray brief. There is no denial of due process here. The board clearly articulated how it construed the term field and how it mapped Borghese to the claims. This is nothing like the personal web case cited by ICS, where the board did not cite, let alone explain or analyze or adopt a portion of the petition that referred to the relevant passages of the prior art. In contrast, in this case, the board discussed claim construction extensively at appendix pages 41 through 48. First, determining why ICS's proposed construction wouldn't work. And the main reason being the portion of the 129 patent that ICS's council directed your honors to about the delimited alpha numeric fields. That is only one of the types of fields that is disclosed by the 129 patent. In addition, the claims themselves actually require fields that contain images, and those are not delimited and alphanumeric. So for that reason alone, the portion of the spec that ICS's council is pointing to is not the governing factor here. That is the point in the spec upon which ICS premises its entire claim construction argument in order to get to the requirement for label data and content data. So all of that falls when it's recognized that the fields do not have to be delimited alphanumeric character strings. After going through ICS's arguments in detail, the board also set forth its own construction and pointed to the specification to articulate the specific reasons why that construction was okay. The board concluded its claim construction discussion by stating that it was interpreting fields, and I quote, for purposes, end quote, of its decision. The board then went on to apply Borghese, first using that construction and then using ICS's construction. This is an important point if we look at APX pages 58 and 59. Even applying ICS's construction, the board found that Borghese discloses the fields under that construction. So really, the whole discussion about whether ICS's construction is appropriate or not does not even need to impact the ultimate outcome of this case, given that the board already found, even under ICS's construction, that ICS loses. ICS also complains that the board didn't explicitly state how its interpretation related to the terms that actually appear in the claims, identifiable fields, and fields of a GUI. As I discussed before with you, Judge Chen, that is something that the board did through pointing to the different portions of Borghese in its final written decision. I also want to note that the board didn't need to expressly address those types of arguments by ICS, the claim differentiation arguments, because they weren't properly before the board. They were only raised in ICS's demonstratives. ICS also questions whether the board's construction is used consistently in the dependent claims of the 129 patent. ICS focuses its arguments on Claim 2, so I'll focus on Claim 2 as well. If you look at Appendix Pages 61 and 62, the board clearly uses the same construction for Claim 2 that it uses for Claim 1, because the board refers back to its discussion of Claim 1 in discussing Claim 2. In its last argument about the adequacy of the board's decision, ICS disputes whether the board sufficiently articulated how Borghese teaches or suggests inputting data into fields. ICS's selective quotations of the board's final written decision fail to tell the whole story here. Not only did the board point to Traveler's arguments for the limitations at issue, but as we've discussed before, it also specifically pointed to Borghese's fields 110 for entering, reviewing, and certain information. That's at Appendix Page 53. In addition, the board pointed to Dr. Clark, its Traveler's Experts Declaration, and his explanation of how such information would be in images as required by the claims. That's at Appendix Page 54. Finally, ICS argued that it was improper for the board to treat its definition as open-ended and capable of covering fields that include executable code. ICS believes its definition is not open-ended because it recites that fields means data comprised of. Labeled data and content data attributes something special to comprised of. ICS argues that this court's CIAS case doesn't support open-ended treatment of comprised of language, but that's just wrong. The CIAS case clearly articulates how comprised of means the same thing as comprising and thus open-ended. The court points out that comprised of can be used in other ways outside of the patent context and when the meaning doesn't matter in the context of patents. So, for example, if it's used to describe an accused product and you're not doing analysis of the specific meaning of the language. To sum up, substantial evidence supports the board's claim construction and obvious misfindings. Not only does this evidence come in the form of patents and the prior references themselves, but it also comes in the form of extensive declarations from travelers expert, Dr. Clark, which the board credited throughout its opinions. In contrast, ICS has nothing but attorney arguments. The board rejected its conclusory four-page declaration by Mr. Gross is unpersuasive. That's at appendix page 46. And ICS does not even cite to that declaration to this court. Moreover, even if this court was to side with ICS and claim construction, doing so wouldn't change anything. As we previously discussed, ICS wouldn't be prejudiced because the board already found that even under ICS's construction, the claims are obvious. And if there are no further questions, I'll see the rest of my time. Okay. Thank you, Mr. Halberg. I know my time is short. So briefly, that comprised case has absolutely no bearing here. We all know that comprised is a term of patent claim drafting art, typically used in chemical cases. And to try to give it some sort of meaning in the text of a patent specification just really doesn't make any sense. More importantly, I just want to emphasize that we feel like the board was led astray here. It initially thought that no interpretation of fields was necessary. It then came around to following the lead of the petitioner. And the petitioner expounded a one-size-fits-all approach. A field is a field, whether it's a pop-up in a GUI form or whether it's a very detailed, delimited string of alphanumeric characters, or whether it's clearly identified as something that can be used in multiple forms, all of which is disclosed in the specification. To say that a GUI field is the same as the identifiable fields that's specifically defined is similar to saying that a baseball field is like a magnetic field because they're fields. One field is not the same as another. Thank you, Your Honor. Okay. Thank you, Mr. Ward. Thank both counsel. The case is submitted. Our next case is number 10.